UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

_____
**TERANESHA TAYLOR**             )
2400 24th Rd. S., Apt. 38        )
Arlington, VA 22206              )
                                 )
   *Plaintiff,*              )
                                 )
   v.                        ) Case No. _____
                                 )
**CENTER FOR AUTISM AND**        ) **JURY TRIAL DEMAND**
   **RELATED DISORDERS, LLC**)
<u>**Serve Registered Agent**</u>    )
National Registered Agents, Inc. )
4701 Cox Rd. Ste. 285            )
Glen Allen, VA 23060             )
                                 )
   *Defendant.*              )
_____)

## COMPLAINT

1. Teranesha Taylor ("Plaintiff" or "Taylor") files this instant lawsuit for declaratory and monetary relief against her former employer, Center for Autism and Related Disorders, LLC ("CARD"). This action alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"); and retaliation in violation of the Virginia Whistleblower Protection Law ("VWPL"), Va. Code § 40.1-27.3.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action raises allegations under federal laws.

1

3. This Court has supplemental subject matter jurisdiction over Taylor's VWPL claims pursuant to 28 U.S.C. § 1367, as they arise from a common nucleus of facts as her federal law claims.

4. Venue is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this Complaint took place in Alexandria, Virginia, where CARD is located and where Taylor worked.

5. At all times relevant to this complaint, Defendant was Plaintiff's employer under Title VII, Section 1981, and the VWPL.

6. In consideration of the foregoing, personal jurisdiction and venue are proper in this Court.

7. Plaintiff believes that but for her race and protected activities she would not have been constructively terminated.

## PARTIES

8. Plaintiff Teranesha Taylor ("Plaintiff" or "Ms. Taylor") is a resident of Arlington, Virginia.

9. Defendant CARD is a Limited Liability Corporation that is authorized to transact business in Virginia. CARD's principal place of business is in Plano, Texas. CARD's LinkedIn page states that it "*is the world's largest and most experienced autism treatment provider and the third largest non-governmental organization in the United States contributing to autism research. CARD was founded in 1990 and treats individuals of all ages who are diagnosed with autism spectrum disorder (ASD) at treatment centers throughout the United States and around the globe. CARD treats individuals with ASD using the principles and procedures of applied behavior analysis (ABA), which is empirically proven to be the most effective method for treating individuals with ASD and recommended by the American Academy of Pediatrics and the US Surgeon General.*"

10. Upon information and belief CARD employs over 500 employees nationwide.

11. Defendant employed Taylor at its location in Alexandria, Virginia as a Speech Language Pathologist ("SLP") at all times relevant to this matter.

12. Taylor's supervisors who discriminated and retaliated against her were white females, Ms. Mary Ann Cassell, the Superintendent of all three of CARDS' local schools, and Chelsea Brutin, the Office Manager.

**JURISDICTION AND VENUE**

13. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

14. This Court has supplemental jurisdiction over the VWPL claims pursuant to 28 U.S.C. § 1367, because they arise from the same case or controversy as her federal claims.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

16. This Court has personal jurisdiction over Defendant as it regularly conducts business within this judicial district.

**FACTS**

*Plaintiff's Success and Positive Performance Feedback Prior to Engaging in Protected Activity*

17. Taylor is a Black woman who began working for CARD as an SLP on August 10, 2021.

18. Plaintiff was an excellent employee and routinely met or exceeded expectations at CARD, as noted in her performance reviews by her clinical fellowship supervisor who supervised her clinical fellow.

19. Throughout her tenure at CARD, Taylor received praises and passing scores on her clinical fellow ratings for her job performance.

3

20. Per the CARD Employee Manual, employees whose work performance is suffering are to be put on performance improvement plans ("PIP"). CARD never placed Plaintiff on a PIP.

21. Quite the opposite, she routinely received positive feedback and was rated either "successful" or "highly successful" in her performance reviews which were required for her to acquire her full SLP license which was granted while employed at CARD.

*Plaintiff Was Discriminated Against in the Terms and Conditions of Her Employment*

22. When Taylor began working at CARD on August 10, 2021, she shared an office located within the CARD Academy with another Black SLP, Rediet Kifle. They were the only Black Allied Professionals at the Academy.

23. A week after moving into the office, they arrived at work only to find that students were at their assigned desks and their items had been moved outside the Academy to a space not affiliated with the school.

24. When Taylor asked Ms. Cassell why her and Kifle's office had been moved, she stated that she needed the extra space for a single student. This did not make sense to Taylor since CARD had multiple classrooms within the Academy where they could have been located.

> **Commented [MM1]:** Did you both ask or just you?
> **Commented [TT2R1]:** Yes.

25. The move was discriminatory and segregated Taylor and Kifle from the rest of the white staff.

26. On January 2, 2022, the school moved from its Eisenhower location to a new location in Springfield location, both in Virginia, and Taylor and Kifle approached Ms. Cassell and Kifle asked for access to the door that was closest to their office. Ms. Cassell stated that

> **Commented [MM3]:** Did you both ask or just you?
> **Commented [TT4R3]:** Yes, we were together.

4

she would have to ask the management company of the building if she could give them door access via the Lockley app.

27. Ms. Cassell's explanation made no sense as their school occupied over 90% of the building, she was the Superintendent of the three CARD academy schools and with the head of the entire school operations.

28. On January 6, 2022, Ms. Cassell sent an email stating that everyone must enter through doors that were on the opposite side of the school to ensure compliance with arriving on time. Yet, on January 10, 2022, Taylor saw Zach (a white coworker) enter the door with the Lockley app that she had requested from Ms. Cassell. He stated that Ms. Cassell and Chelsea Brutin texted him access to the app and that he did not have to request access.

29. It was around June 2022, when more occurrences transpired, that Taylor realized that she was being discriminated against based on race as new white staff were hired and housed within the Academy and were treated better than she and Kifle were in the terms and conditions of their employment.

   *Commented [MM5]: How so?*

30. Taylor complained of race discrimination on or around July 19, 2022 after a new Caucasian employee, Samara Cotumaccio, was also granted access to the building codes and side door via the Lockley app whilst Ms. Cassell refused Taylor and Kifle that same access.

31. Taylor also became aware that the Ms. Cassell and Ms. Brutin excluded her and Kifle from leadership meetings that their white counterparts were invited to.

32. On August 2, 2022, Taylor met with the HR team to discuss her email re: the discrimination that she reported on July 19, 2022. In the meeting, the HR associates, Brittney Schuessler (HR manager) and Shondolyn Jones (Division HR Manager) stated

that Ms. Cassell probably sensed Taylor's tension which is why she avoided her when she raised her complaints. HR did not offer Taylor any solutions for addressing her discrimination complaints. Taylor ended the call by stating that she was going to report the violations to the EEOC.

33. Shortly thereafter, on August 4, 2022, rather than setting up a meeting with Taylor to address the discrimination issues that she had raised, CARD instead set up a disciplinary meeting and wrote her up for a "no-call-no-show." Taylor had actually reported to work and left the worksite per COVID protocol when she was notified of her potential COVID exposure because she had to get tested for COVID.

34. Taylor knows this writeup was discriminatory and potentially retaliatory because a white employee, Sara Jarvis, failed to report to work without calling in on *multiple occasions* in a single month yet was never written up for violating the "no call no show" policy.

*Defendant Retaliated Against Plaintiff After She Engaged in Protected Activity*

35. Plaintiff, as a mandatory reporter per Virginia law, reported the abuse of CARD's clients.

36. Teranesha followed the CARD complaint reporting procedure (p. 13 of the Employment Handbook) and reached out to HR via email to report an instance of child abuse in February 2022.  HR did not respond.

37. The particulars of the February 2022 instance were that Taylor witnessed a teacher, JeeMon Won, hit and push a (non-verbal autistic) African American kindergarten student. Taylor told Won right after witnessing the incident that Won was abusing the student.  Won just looked at her. Taylor wrote down what she saw and was going to talk to Ms. Cassell and Ms. Brutin. Instead, they came to her office and told her that it was

"unprofessional" to call a teacher abusive. They said they had cameras to see what happened.

38. Taylor also reported the child abuse to the police on February 8, 2022.

39. Taylor reported four more incidents of abuse on or about February 14, 2022, after hearing of a Black female behavior therapist kick two adult clients and was told that staff were required to not report it so they could handle it internally. Taylor, a mandated reporter, told CPS that same day and later participated in the investigation. They notified the parents. Taylor noticed that CARD disparately disciplined the Black BT more harshly than how they had treated the Asian abuser, Won.

40. On May 13, 2022, Taylor emailed Ms. Cassell and Ms. Brutin notifying them that a Black BT said to a Black little boy (client), "*Do you want me to beat your ass*?" They called her on the phone and asked where it was. She told them it was in the hallway. They thanked her for reporting and put the BT back with the little boy the next day.

41. Plaintiff followed the proper procedures in reporting the instance of abuse and was retaliated against after that.

42. Ms. Cassell made an example of her so that other employees felt intimidated and remained silent by telling the entire school that Taylor reported the teacher to CPS so others would keep quiet about any abuse they witnessed.

43. On February 7, 2022, Taylor learned that Ms. Cassell and Ms. Brutin planned for staff to create a hostile work environment for Taylor to elicit an argument so they could have reason to fire her. They planned a verbal attack to create a fight scenario at work. Taylor reported this to the police on February 8, 2022.

44. Ms. Cassell removed all support that Taylor had before the report of the child abuse. Before the abuse, it was required that the assistant or assigned Behavior Tech ("BT") of the students remain with Taylor for safety at all times. Following that initial report to CPS, the staff no longer helped Taylor with the students. For example, in June 2022, she was left alone with a child who harmed others. The BT assigned to her left her alone and he became aggressive and held a metal chair at her head. There was a BT in the room who could have assisted with this student and she turned and looked at her and turned her head.

45. Taylor called for Ms. Cassell to assist. She walked in stood at the door and waited for the child to de-escalate. Taylor asked for support in the classroom so she would not be left alone again. She told Ms. Cassell that she did not feel comfortable with the child alone especially since she was designated not to be with this child alone. Ms. Cassell told her that she could not help her and she stated that she had other things to do even though the child had raised a chair to Taylor's head. She left Taylor alone with the child in the room. Taylor ended the session early to keep safe. Taylor sent an email to HR about the incident that same day.

46. Ms. Cassell also started rumors that Taylor had lied and made the whole thing up about Won abusing the child back in February 2022.

47. In April 2022, the office would provide lunch to staff bi-weekly and once others heard about Taylor's February 2022 complaint to CPS, she was not informed that lunch was available for staff anymore. Taylor would just walk downstairs and see everyone eating, which was hurtful since they ostracized her.

48. Taylor felt that her safety was in danger and that the environment was too hostile. She was experiencing anxiety and stress by how Ms. Cassell, Ms. Brutin, support staff and other teachers were acting toward her after she reported abuse and discrimination.

49. Defendants constructively terminated Plaintiff's employment on September 6, 2022 after she reported instances of client abuse or neglect, which was a violation of public policy since Taylor was required to make such reports per Virginia law.

**Damages**

50. Enduring the discrimination and retaliation significantly impacted Taylor's emotional and psychological well-being.

51. She has endured a significant amount of stress and anxiety from the described events, which exacerbated her emotional distress.

52. She had to seek out professional medical help to cope with the treatment she was facing.

> **Commented [MM6]:** Did you hire a therapist while you were employed or after you quit?
> **Commented [TT7R6]:** While employed.

53. Taylor has also suffered financial loss in the form of lost wages, lost profit sharing bonuses, lost benefits, and lost employer contributions to her retirement pension plan. Additionally, Taylor has had to pay for additional psychiatric treatment to cope with her exacerbated conditions resulting from Defendant's aforementioned unlawful actions.

> **Commented [MM8]:** Please edit accordingly. Thanks.

**COUNT I:**
**DISCRIMINATION IN VIOLATION OF TITLE VII AND SECTION 1981**

54. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

55. Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of an individual's race. 42 U.S.C. § 2000e, *et seq.*

56. Defendant was at all times relevant to this matter, the employer of Taylor for purposes under Title VII and Section 1981.

57. Plaintiff was fully qualified to perform her SLP position and had performed successfully in her role.

58. Despite her qualifications, Defendant discriminated against Plaintiff in violation of Title VII and Section 1981 based on her race (Black). CARD management treated Taylor and her Black counterpart, Kifle, the only Black Allied Professionals, less favorably than it treated their non-Black comparators.

59. More specifically, Plaintiff was subjected to less favorable terms and conditions of employment because of her race, as described in detail above, and was disparately disciplined in comparison to a white female counterpart who engaged in more instances of "no call no shows", as described in detail above.

60. Plaintiff suffered adverse action when CARD did the following: 1) segregated her and Kifle from the leadership team by moving their office outside the Academy, 2) refused to give her and Kifle the door access codes; 3) excluded her and Kifle from leadership meetings; and 4) disparately disciplined her for an unjustified "no call no show", and 5) constructively discharged her, as described, above.

61. Defendant's policies, practices, and/or procedures produced a disparate impact on Plaintiff with respect to her terms and conditions of her employment.

62. Defendant's discrimination against Taylor was an intentional or reckless disregard of her rights under Title VII and Section 1981.

63. Defendant engaged in the discriminatory actions described above with malice, or with a reckless indifference to Taylor's legal rights, subjecting her to adverse terms and

condition of employment because of her sex. Title VII and Section 1981 provide that Taylor is therefore entitled to punitive damages for Defendant's actions alleged herein.

64. Plaintiff has been damaged as a result of Defendant's willful, intentional and unlawful conduct.  As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, continues to suffer, and will in the future suffer humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, backpay, front pay, litigation expenses including attorney's fees, and consequential damages, and other injuries.

## COUNT II:
## RETALIATION IN VIOLATION OF TITLE VII AND SECTION 1981

65. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

66. Under Title VII and Section 1981, it is an unlawful employment practice for an employer to retaliate against any individual by taking an adverse action because of the individual's opposition to any practice made illegal by Title VII and Section 1981.

67. Plaintiff engaged in protected activity, as described in detail above.

68. Defendant subjected Plaintiff to retaliation for her engaging in protected activity, as described in detail above.

69. Plaintiff was fully qualified to perform her position as an SLP and had performed successfully in her role.

70. At the time Defendant retaliated against Plaintiff, CARD management was aware that Plaintiff had complained about race discrimination and retaliation in the workplace.

71. CARD's conduct in disparately disciplining Taylor would likely dissuade a reasonable worker from raising race discrimination complaints against their employer.

72. Defendants retaliated against Taylor for her good faith reports by making an example of her so that no other employees would report the abuse they witnessed, by creating a hostile work environment for her to get her into a fight so they could fire her, and by removing all classroom support Taylor had for classroom safety, by refusing to help her after becoming aware that the client raised a chair to Taylor's head, by spreading rumors about Taylor and claiming that she lied about Won abusing the child back in February 2022, by not providing her staff lunch, and by constructively terminating her employment on September 6, 2022.

73. CARD's conduct was in retaliation for Plaintiff's opposition to practices made illegal under Title VII and Section 1981.

74. Defendant's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's statutory rights.

75. As a direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered a loss in wages and benefits, diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

76. Plaintiff has been damaged as a result of Defendant's willful, intentional and unlawful conduct.  As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, continues to suffer, and will in the future suffer humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, backpay, front pay, litigation expenses including attorney's fees, and punitive damages, and other injuries.

## COUNT III:
### RETALIATION IN VIOLATION OF VWPL

77. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

78. The Virginia Whistleblower Protection Law prohibits employers from taking any retaliatory action against an employee who "in good faith reports a violation of *any* federal or state law or regulation to a supervisor or to any governmental body or law enforcement official." Va. Code § 40.1-27.3.

79. An employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee in good faith provides information to or testifies before any governmental body or law-enforcement official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation.

80. As alleged above, Taylor reported multiple instances of client abuse to her supervisors and CPS, not to mention, she also reported the February 2022 incident with Won to the police.

81. Also as alleged above, Taylor also informed HR that she was going to file an EEOC complaint to address her discrimination complaints, which she did.

82. Plaintiff engaged in protected activity by making good faith reports of Defendant's violations of Title VII, Section 1981, and Virginia laws regarding mandatory reporting, as described above.

83. Defendants responded to Plaintiff's good faith reports by making an example of Taylor, so that no other employees would report the abuse they witnessed, by creating a hostile

13

work environment for her to get her into a fight so they could fire her, and by removing all classroom support Taylor had for classroom safety, by refusing to help her after becoming aware that the client raised a chair to Taylor's head, by spreading rumors about Taylor and claiming that she lied about Won abusing the child back in February 2022, by not providing her staff lunch, and by constructively terminating her employment on September 6, 2022.

84. As a result of Defendant's actions, Plaintiff has been damaged.

85. Plaintiff has been damaged as a result of Defendant's willful, intentional and unlawful conduct. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, continues to suffer, and will in the future suffer humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, backpay, front pay, litigation expenses including attorney's fees, and punitive damages, and other injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Teranesha Taylor seeks judgment against Defendant, as follows:

(a) That the Court award Ms. Taylor back pay for her back and future wages, lost profit sharing bonuses, lost benefits, lost employer contributions to her retirement plan, and medical expenses incurred in an amount to be determined by a jury;

(b) That the Court award Ms. Taylor $450,000 in compensatory damages to cover her emotional damages, medical expenses resulting from Defendant's unlawful conduct, attorneys' fees, expert fees, and costs of this action as may be permitted by law;

(c) That the Court award Ms. Taylor pre- and post-judgment interest on the foregoing amounts;

(d) That the Court award Ms. Taylor past and future pecuniary and out-of-pocket expenses;

(e) That the Court award Ms. Taylor punitive damages in an amount this Court deems appropriate; and

(f) That the Court award Ms. Taylor any and all other relief that this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Dated: November 6, 2023

Respectfully submitted,

**Teranesha Taylor**

By Counsel:

__/s/_____

Monique A. Miles, Esq.  (VSB #: 78828)
Old Towne Associates, P.C.
1500 Woodbine Street
Alexandria, Virginia 22302
Tel: 703-519-6810
Fax: 703-722-8303
mmiles@oldtowneassociates.com

*Counsel for Plaintiff*

15